[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on June 29, 1962 at Darien, Connecticut. The plaintiff has resided continuously in this state for more than one year prior to November 20, 1990. There are no minor children issue of this marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter on that ground.
The court has carefully considered the criteria set forth in Section 46b-81 and Section 46b-82 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
This is a marriage of some 30 years. The three children issue of the marriage are all over the age of 18 years. The wife testified the husband was a good provider and industrious and that the parties had a "nice life" in Greenwich.
Since 1976 the plaintiff has kept the books for a construction company, working out of her home. In addition, for the past six years the plaintiff has had a second part-time job as a bookkeeper in a physician's office. The plaintiff is in good health except for some anxiety attacks. At the present time, the plaintiff is grossing approximately $30,000 per year from her two part-time positions.
The husband has a fine educational background and is a graduate of Andover, Princeton and Yale Law School. He was a partner in a prestigious Greenwich law firm and then went on to become a vice president and head of the legal department at Chemical Bank, New York for ten years. In February 1989, the defendant was terminated from his position and received a one year severance pay. Unable to obtain other employment, the defendant is in the process of building up his own consulting firm and hopes to increase his fees over the next two years. In 1989 the defendant CT Page 169 earned $219,589 at Chemical and in 1990 he earned $216,310. The defendant's total income from consulting fees in 1991 was $15,000. The parties separated in May 1989. The defendant is in good health, except for poor eyesight in one eye.
Each party presented an expert real estate appraiser who gave evidence of the fair market value of the marital home, the major asset of the parties. The plaintiff's appraiser came up with a market value of $550,000. The figure was apparently approximately $100,000 lower than the parties were using in their negotiations. Mr. Kyle, the plaintiff's appraiser found no comparable sales in the Belle Haven area and used comparables in the Milbrook area. These comparables were on smaller lots, with smaller living areas and overall, the properties were less modern.
The defendant's appraiser arrived at a market value of $635,000. His comparables included two adjacent properties — one with substantially more square footage than the parties' marital home. All were in good condition as opposed to average condition of the marital property. The court is aware that all comparables are adjusted for differences. Regardless of which figure is used, the marital home has substantial equity and has a value in excess of the combined liquid assets of the parties. Using the plaintiff's lower appraisal now, in dividing the assets would appear appropriate in view of today's depressed real estate market. No doubt if the property were placed on the market for sale and left there for a period of time (one of the comparables was on the market for 385 days) it might possibly bring the higher figure as reflected in the defendant's appraisal.
The real estate was purchased for $75,000 many years ago and whether the property were sold now or after the parties reached the age of fifty-five years, there will still be a substantial capital gains tax.
The court has carefully considered these figures, weighed the pros and cons, and has taken into account the statutory criteria in attempting to arrive at a fair, reasonable and equitable distribution of the assets of this thirty year marriage. Unfortunately, the parties were unable to resolve their differences. The court declines to assess fault to either party.
Real Estate
The real estate located at 20 Intervale Place, Greenwich, Connecticut shall be the sole property of the plaintiff. The defendant shall transfer his interest, right, and title in and to said real estate to the plaintiff within two weeks of date. The plaintiff shall be responsible for the balances due on the first and second mortgages on said property and shall hold the defendant CT Page 170 harmless therefrom.
The defendant shall be solely responsible for the balance due on the home equity loan which is in the approximate amount of $10,530.36. This loan represents funds borrowed by the defendant to pay for his motor vehicle.
Alimony
The defendant shall pay to the plaintiff during his lifetime, the sum of $1,000 per month until the plaintiff reaches the age of 65 years at which time the alimony shall be reduced to $1.00 per year. All alimony shall terminate upon the plaintiff's death, her remarriage or cohabitation as defined by statute, whichever shall first occur.
In view of the defendant's present employment situation, the court shall take a second look at the order of alimony one year from date.
Personal Property
The parties shall divide the furniture and furnishings as contained in the marital home, unless otherwise disposed of herein, as they shall agree. If the parties are unable to agree, they are referred to Family Relations for mediation and if the mediation is unsuccessful, they shall return to court for orders after a hearing.
Other Property
1. The plaintiff shall be entitled to the assets as listed on her financial affidavit including:
 Union Trust CD Dreyfus Money Market Fund Her IRA People's Bank Money Market Account Union Trust checking account Her shares of stock The 1987 Ford Taurus motor vehicle Her jewelry and silver
2. The defendant shall be entitled to the assets as listed on his financial affidavit including:
 Union Trust checking account Union Trust CD His Shearson account His IRA at Union Trust CT Page 171 The Shearson IRA rollover from Chemical Bank Chemical Bank Pension account The 1988 Volkswagen GTI motor vehicle His interest in the estate of his deceased mother
ODRO
The plaintiff shall relinquish any and all interest she has in the defendant's Chemical Bank Pension Account/Retirement Plan and she shall execute a QDRO with a zero interest if deemed necessary by the defendant.
Counsel Fees
Each party shall pay their respective attorneys' fees.
Life Insurance
The defendant shall continue to provide and maintain the life insurance presently in effect and shall name the plaintiff as irrevocable beneficiary thereon, for so long as the defendant has an obligation for alimony. This provision shall be modifiable.
COPPETO, J.